IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATLACK LEASING, LLC; PENN INTERMODAL LEASING, INC.; and VASILI KRISHNAMURTI; | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | NO. 09-1570 |
| v. | : : | |
| MORISON COGEN, LLP, and JAMES M. BURNS, CPA, | : : : | |
| Defendants. | : : | |

DuBOIS, J.                                              January 13, 2010

**MEMORANDUM**

**I.      INTRODUCTION**

This is an action against an accounting firm and one of its partners for breach of contract, fraudulent misrepresentation and tort liability. Presently before the Court is defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), all six counts of the Complaint for failure to state a claim and to dismiss Count VI, pursuant to Rule 12(b)(7) for failure to join a necessary party under Rule 19. For the reasons discussed below, the Court grants defendants' motion to dismiss Counts II and III of the Complaint. Defendants' motion is denied in all other respects.

**II.     BACKGROUND**[1]

Richard Parillo negotiated an agreement to purchase Matlack Leasing Corporation

---

[1] These facts are taken from the Complaint and presented in the light most favorable to the plaintiffs.

-1-

("Matlack") in 2000. (Compl. ¶ 17.) In order to close on the purchase, Parillo sought and received a $1 million investment from Vasili Krishnamurti's investment company, Penn Intermodal Leasing ("Penn"). (Compl. ¶¶ 18 - 20.) In return for this investment, Penn received a 40% equity interest in Matlack. (Compl. ¶ 21.) Sometime around November 15, 2000, Matlack, Penn, and Parillo entered into a written Operating Agreement for Matlack. (Compl. ¶ 22.) This agreement formalized Penn's 40% interest in Matlack and appointed Parillo, who held the remaining 60%, as the company's Managing Member responsible for day-to-day operations. (Compl. ¶ 23 - 25.)

The Operating Agreement contained several clauses designed to protect Penn as the minority member. First, the agreement prohibited Parillo from approving any expense not included in Matlack's annual budget that exceeded $25,000 per expenditure or $250,000 in aggregate per year without the written consent of 90% of Matlack's members. (Compl. ¶ 26.) Second, the agreement stipulated that Matlack's approved annual budget would govern the use and expenditure of Matlack funds, except for individual expenditures of less than $25,000 or annual aggregate purchases less than $250,000. (Compl. ¶ 27.) Finally, the agreement provided that Parillo was prohibited from violating the term of the Operating Agreement without the prior written consent of 100% of Matlack's members. (Compl. ¶ 28.)

Matlack hired Morison Cogen ("MoCo") to audit its financial statement for the fiscal years 2001 through 2006. (Compl. ¶ 31-33.) James M. Burns served as the MoCo partner in charge of each of these audits. (Compl. ¶ 33.) After each of these audits, MoCo certified that Matlack's annual financial statements were audited in accordance with Generally Accepted Auditing Standards ("GAAS") and that the statements presented Matlack's financial position fairly in all material respects. (Compl. ¶ 35.)

Matlack's Operating Agreement gave Parillo the authority to make distributions from

Matlack's cash flow. (Compl. ¶ 105.) When exercising this authority Parillo was required to make the distributions in proportion to the members' percentages of ownership: Parillo was to receive 60% of any distribution, Penn 40%. (Compl. ¶ 106.)

Plaintiffs allege that Parillo distributed money to himself, but never to Penn, in a series of allegedly improper transactions designed to finance several businesses owned and operated entirely by Parillo. First, the Complaint alleges that between 2001 and 2006 Parillo used Matlack funds to purchase property, capital, and to pay salaries and expenses for businesses owned entirely by Parillo. These businesses included Brite Clean, LLC ("BCL"), Brite Clean, Inc. ("BCI"), Brite Clean, NJ, Inc. ("BCNJ"), US Liquids Terminal Services Inc. ("US Liquids"), Brite Clean Houston ("BCH"), RAP Beaumont Properties, LP, ("RAP-BP") and Brite Clean Chicago, LLC ("BCC"). (Compl. ¶¶ 36-98.) Penn did not approve these purchases, did not receive an equity stake in the purchased companies, and did not receive its 40% share of the money Parillo distributed to himself in order to make these purchases. (Compl. ¶ 45, 48 - 50, 52, 62, 65, 66, 75 - 78, 83, 85, 95, 97, 113(b) - (g), 114.) Second, Parillo and BCH took improper loans from Matlack and never paid them back. (Compl. ¶¶ 99 - 104, 113(h).) Third, between April 13, 2006 and October 9, 2006, Parillo distributed $952,110.60 of Matlack funds to himself, but not to Penn. (Compl. ¶¶ 105 - 112.) Fourth, in 2000, Parillo issued checks from Matlack to himself for a total of $59,000 of "financing costs" that are alleged to have actually been disguised contributions to Parillo. (Compl. ¶ 113(a).) Finally, Parillo used Matlack's American Express credit card for personal expenses and for expenses related to his various businesses. (Compl. ¶ 113(i).) All told, plaintiffs allege that they are entitled to 40% of the amount of these distributions – a sum in excess of $1 million. (Compl. ¶115.)

Sometime around February 2, 2007, Krishnamurti agreed to purchase Parillo's 60% membership interest in Matlack. (Compl. ¶ 116.) Krishnamurti determined the purchase price for

Parillo's interest by relying, in part, on Matlack's audited financial statements. (Compl. ¶ 119.) Because these statements did not disclose the improper distributions made to Parillo's side-businesses, or the loans, credit-card purchases and "finance fees" paid to Parillo, Krishnamurti alleges that he paid much more for Parillo's interest than he otherwise would have. (Compl. ¶ 121.)

Plaintiffs allege that they could not have discovered Parillo's undisclosed distributions from reading Matlack's financial statements, in part because Matlack's MoCo-audited financial statements did not contain any "related party" disclosures before 2006. (Compl. ¶¶ 125, 126.) When related party disclosures were made in Matlack's 2006 statement, they were in a summary form that did not identify the entities involved or the amounts of the transactions. (Compl. ¶127). Plaintiffs acquired control of Matlack's electronic and paper records sometime around April 30, 2007. (Compl. ¶ 122.) They allege that they did not discover the improper BCL, BCNJ, and some of the BCH transfers until Autumn 2007 and did not discover other BCH transfers, the RAP-BP and BCC transfers until Spring 2008. (Compl. ¶ 128.) After discovering the improper transfers, plaintiffs filed suit against Parillo and each of the various Brite Clean entities. (Compl. ¶ 129).

The claims in plaintiffs' Complaint stem from the actions of MoCo and Burns. Plaintiffs allege that (1) MoCo and Burns know about BCI and BCL as "related parties" at the time of the 2001 audit, (2) MoCo and Burns served as accountants for the Brite Clean entites, and (3) MoCo served as Parillo's personal accountant. (Compl. ¶¶ 132 -135.) Because of these relationships, MoCo had access to the financial books and records of Parillo and the Brite Clean businesses and access to Brite Clean employees. (Compl. ¶ 136.)

In Count One of the Complaint, Matlack claims that it suffered over $1 million of losses as a result of MoCo and Burns's professional negligence in preparing Matlack's financial statements in the years 2001 through 2006. (Compl. ¶¶ 137 - 144.)

In Count Two of the Complaint, Matlack alleges that MoCo breached a contract between the organizations to provide accounting and auditing services, and that this breach caused Matlack the loss of valuable assets and funds, lost opportunities to develop its business, and lost opportunities to stop Parillo from creating losses, which exceed $1 million dollars. (Compl. ¶145 - 151.)

Penn alleges in Count Three of the Complaint that it was a third-party beneficiary of the contract between Matlack and MoCo. (Compl. ¶ 157.) It further alleges that it relied on MoCo's financial statements, that MoCo knew Penn would rely on the statements, that the circumstances of MoCo's retention by Matlack indicate that MoCo intended Penn to be a beneficiary of MoCo's auditing agreement with Matlack, and that Penn was damaged by an amount in excess of $1 million when MoCo breached its contract. (Compl. ¶ 158, 159.)

Count Four of the Complaint is an allegation of negligent misrepresentation against MoCo by each of the plaintiffs. Plaintiffs allege that MoCo negligently supplied false information to the plaintiffs, that plaintiffs relied upon the statements, and that this reliance caused damages in excess of $1 million. (Compl. ¶ 160 - 170.)

In Count Five of the Complaint, plaintiffs allege that MoCo fraudulently misrepresented Matlack's financial condition in the 2001 through 2006 audits. Plaintiffs justifiably relied on this misrepresentation, which caused damages in excess of $1million. (Compl. ¶ 171 - 177.)

Finally, Count Six of the Complaint is a claim by the plaintiffs that MoCo and Burns aided and abetted Parillo's breach of fiduciary duty, an act that caused damages to the plaintiffs in excess of $1 million. (Compl. ¶ 178 - 186.)

## III. JURISDICTION

Matlack is a limited liability company organized under the laws of Pennsylvania. (Compl. ¶ 9). Neither the Supreme Court or the Third Circuit has addressed the question of how to determine

the citizenship of a limited liability company. Kimberly-Clark Pennsylvania, LLC v. Delaware Reg'l Water Quality Control Auth., 527 F. Supp. 2d 430, 432-433 (E.D. Pa. 2007). However, in Carden v. Arkoma Assocs., the Supreme Court held that a limited partnership shares the citizenship of each of its partners. 494 U.S. 185, 195-96 (1990). Subsequently, the Third Circuit explained that "it is clear that Carden tells us that a court must take into account not less than all of the entities' members when determining the citizenship of an artificial entity." Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F. 3d 192, 205 (3d Cir. 2007).

Currently, Matlack's sole member is Penn, a Delaware Corporation with its principal place of business in New York. (Compl. ¶ 8). The citizenship of corporations, unlike the citizenship of limited liability companies, is specified by statute. According to 28 U.S.C. § 1332(c), corporations are citizens of the states in which they are incorporated and of the states in which they have their principal place of business. Accordingly, Penn is a citizen of both Delaware and New York. Because, under Carden and Emerald Investors, Matlack is a citizen of all of the states of which its members are citizens, Matlack is a citizen of both Delaware and New York. There is no dispute that plaintiff Krishnamurti is a citizen of New York. (Compl. ¶ 7.)

MoCo is a limited liability partnership, (Compl. ¶ 10), and, like Matlack, it is an artificial entity whose citizenship is determined by reference to the citizenship of all of its members. Each of its members, including defendant Burns, is a citizen of either New Jersey or Pennsylvania. Because the dispute concerns an amount controversy greater than $75,000 and there is complete diversity between the parties – plaintiffs Matlack and Penn are citizens of New York and Delaware and plaintiff Krishnamurti is a citizen of New York, (Compl. ¶ 7), while defendants are citizens of New Jersey and Pennsylvania – the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

**IV.     LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion.  In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff . . . ."  Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility."  Id.  "Where a complaint pleads facts that are 'merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach" which it later formalized in Iqbal.  Iqbal, 129 S. Ct. at 1950;  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations which constitute nothing more than "legal conclusions" or "naked assertions."  Twombly, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s] . . . —to determine" whether it states a plausible claim for relief. Id.

## V. DISCUSSION

### A. Count I – Matlack's Claim of Professional Negligence Against Burns and MoCo

Defendants argue that Matlack's claim for professional negligence should be dismissed, first, because Parillo's unlawful conduct as the sole actor in charge of the company must be imputed to Matlack, whose claim is thus barred by the doctrine of *in pari delicto;* and, second, because Parillo's knowledge of the alleged monetary injury to Matlack must also be imputed to the company, a conclusion that renders Matlack's claim barred by the statute of limitations.

Matlack responds that Parillo's conduct cannot be imputed to Matlack because Parillo was not acting in Matlack's interest.

Both of defendants' arguments are insufficient to justify dismissal of plaintiff's claim because both depend on a fact-specific inquiry ill-suited to resolution by motion to dismiss. "[*I*]*n pari delicto*, which literally means 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." Pinter v. Dahl, 486 U.S. 622, 632 (1988). The Third Circuit has called the doctrine of *in pari delicto* a "murky area of law," an "ill-defined group of doctrines that prevents courts from becoming involved in disputes in which the adverse parties are equally at fault." Official Comm. of Unsecured Creditors of Allegheny Health, Educ. and Research Foundation v. PricewaterhouseCoopers, LLP, No. 07-1397, 2008 WL 3895559, at *5 (3d Cir. July 1, 2008) (hereinafter "AHERF").[2] Despite this murkiness, the Third Circuit has illuminated

---

[2] In AHERF, the Third Circuit certified a question to the Supreme Court. "What is the proper test under Pennsylvania law for determining whether an agent's fraud should be imputed to the principal when it is an allegedly non-innocent third-party that seeks to invoke the law of imputation in order to shield itself from liability?" AHERF, 2008 WL 3895559, at *6. This is a different question that the one presented here. The question presented here is whether the claimed wrongdoing of a partner who allegedly controlled a party, should bar that party from recovery once the partner who committed the claimed wrongdoing is no longer affiliated with the party. Because the questions are distinct, there is no reason to stay this case pending the Pennsylvania Supreme Court's answer to the question certified by the Third Circuit in AHERF.

at least one principle: whether the doctrine applies depends on whether an agent's (Parillo) alleged wrongdoing can be imputed to the principal (Matlack). See Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 355 (3d Cir. 2001). Imputation of a corporate officer's wrongdoing to the corporation may occur if the officer's wrongful conduct is (1) in the course of his employment and (2) for the corporation's benefit. Id. at 358. Each of these elements requires a fact-sensitive inquiry that renders dismissal of the claim prior to discovery inappropriate. Cf. In re Le-Nature's Inc v. Wachovia Capital Markets, Inc., No. 09-mc-00162, 2009 WL 3571331, at *6 n.10 (W.D. Pa. Sept. 16, 2009) (noting that no matter the legal rule used to determine imputation, "the question turns upon facts, and thus, to grant a motion to dismiss without discovery on the matter would be premature").

Determining whether Parillo's knowledge should be imputed to Matlack for the purposes of applying the statute of limitations is a similarly fact-intensive inquiry that need not be conducted at this stage of the litigation.

The dispositive issue in a motion to dismiss is whether, assuming the allegations in plaintiffs' Complaint are true, plaintiffs have stated a claim to relief "that is plausible on its face." Iqbal, 129 S. Ct. at 1949. The Court concludes that they have. Defendant's arguments go to critical issues of fact that must be developed in the record.

**B. Counts II & III – Breach of Contract and Third-Party Beneficiary Claims**

Counts II and III of the Complaint each assert claims under a theory of contract. In order to state a claim under this theory, a plaintiff "must raise an issue as to whether it specifically instructed the defendant to perform a task that the defendant failed to perform." Sherman Indus. Inc. v. Goldhammer, 683 F. Supp. 502, 506 (E.D. Pa. 1988). Plaintiffs' Complaint does not accomplish this task.

Defendants' motion raises a fundamental issue: what distinguishes a claim of negligence,

asserted in Count I, from claims of breach of contract, asserted in Counts II and III? This question can be answered by reference to three basic legal premises. First, failure to perform a service with a certain level of care typically constitutes a claim of negligence, not breach of contract. See, e.g., Hoyer v. Frazee, 470 A.2d 990, 992-93 (Pa. Super. Ct. 1984) (determining that a standard of care claim is a negligence claim and not a contract claim), *abrogated on other grounds by* Bailey v. Tucker, 621 A.2d 108 (Pa. 1993) *as recognized by* Gorski v. Smith, 812 A.2d 683, 693 (Pa. Super. Ct. 2002). Second, a contractual provision to act with a required level of care "cannot constitute a specific contractual promise." Official Comm. of Unsecured Creditors of Corell Stell v. Fishbein and Co., P.C., No. 91-4919, 1992 WL 196768, at *6 (E.D. Pa. Aug. 10, 1992). Finally, the duty to act according to the Generally Accepting Auditing Standards (GAAS) arises by law and is separate and independent of duties imposed by contract. Robert Wooler Co. v. Fidelity Bank, 479 A.2d 1027, 1031 (Pa. Super. Ct. 1984). The logical conclusion of these premises is that a valid contract claim must allege more than just a violation of a pre-existing legal duty – such as the duty to follow GAAS. See Fishbein, 1992 WL 196768, at *6. Accordingly, a claim that a defendant has failed to follow standard accounting practices raises a claim in tort, not contract, even if that obligation is also in the contract. In order to maintain an action under both theories, plaintiffs must show that defendants violated provisions of the contract separate and independent of the duty to act according to GAAS.

Koken v. Deloitte & Touch, LLP, relied upon by plaintiffs, is not to the contrary. 825 A.2d 723 (Pa. Commw. Ct. 2003). In Koken, the liquidator of Reliance Insurance Company filed suit against an accounting firm, Deloitte, and one of Deloitte's principals, alleging various tort and breach of contract claims. The Court allowed both types of claims to proceed. It did so, however, only because the defendant in Koken "made specific promises to Reliance in regard to its loss reserves that Reliance relied upon to its detriment." Id. at 728. Specifically, Deloitte allegedly failed

to provide the agreed-upon services, giving rise to the contract claim, and also failed to provide services according to GAAS, giving rise to the tort claim. See id. at 729-30 (listing various contractual duties, other than the duty under GAAS, that gave rise to the contract claim).

A comparison of the complaints in Koken and Fishbein makes the above principles clearer. In Fishbein, the plaintiff simply pleaded the breach of a contracted-for duty to provide services in accordance with professional standards; in Koken, by contrast, the plaintiff pleaded the breach of specific contractual provisions unrelated to the duty of care. Koken, 825 A.2d at 729-30. Under these circumstances, the Koken plaintiffs had stated an independent, free-standing contract claim, but the Fishbein plaintiffs had not. Id. The difference is one of specificity: the Koken plaintiff alleged violations of contract separate and independent from the duty of professional care.

As in Fishbein, plaintiffs' Complaint fails to allege violations of contractual provisions separate and independent from a provision to provide services according to professional standards. For instance, the Complaint states that under the terms of the contract between Moco and Matlack, MoCo "agreed to plan and perform its work with due professional care and in accordance with professional standards, including, but not limited to auditing standards generally accepted in the United States." (Compl. ¶ 149). The Complaint goes on to provide a laundry-list of examples demonstrating MoCo's failure to meet professional standards. (Compl. ¶ 150). None of these examples references the text of the contract between MoCo and Matlack. Without such references, Count II fails to state a claim and is, accordingly, dismissed.

Count III, like Count II, avers simply that MoCo breached its contract with Matlack by failing to provide services in accordance with professional standards. (Compl. ¶ 156). Without identifying an express contractual duty, separate and independent of a contracted-for duty to act in accordance with standards of professional care, Penn cannot state a claim sounding in contract. For the same reasons articulated with regard to Count II, Count III is dismissed.

**D. Count IV – Plaintiffs' Negligent Misrepresentation Claim Against MoCo**

In Bilt-Rite Contractors, Inc. v. Architectural Studio, the Pennsylvania Supreme Court adopted Section 552 of the Restatement (Second) of Torts "as the law in Pennsylvania in cases where information is negligently supplied by one in the business of supplying information, such as an architect or design professional, and where it will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of information." 866 A.2d 270, 287 (Pa. 2005). The parties dispute the scope of this holding. Defendants argue that the respective claims of Penn and Krishnamurti should be dismissed because Bilt-Rite applies only to architects and design professionals; for all other businesses, privity is required. Plaintiffs respond that Bilt-Rite is not so narrow. They argue that Bilt-Rite applies to all services in the business of supplying information, of which architects are but one example.

The Court agrees with plaintiffs. Bilt-Rite's holding is that a claim may lie "where information is negligently supplied by one in the business of supplying information, *such as* an architect or design professional . . . ." Id. (emphasis added). The words "such as" make it clear that architects and other design professionals are but two examples of a larger category of service providers "in the business of supplying information." See United Nat'l Ins. Co. v. Aon Ltd., No. 04-539, 2008 WL 942577, at *2 n.4 (E.D. Pa. April 7, 2008) (holding same). The Pennsylvania Supreme Court's recent decision in Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania, No. 32 WAP 2008, 2009 WL 5103605 (Pa. Dec. 29, 2009) is not to the contrary. In that case, the Pennsylvania Supreme Court declined to extend the Bilt-Rite exception to a utility company on the ground that it was "not in the business of providing information for pecuniary gain." Id. at *3. In considering whether a utility company falls into the category of businesses providing information for pecuniary gain, the court confirmed that architects and design professional are not the exclusive members of that category.

The Court concludes that, under Pennsylvania law, no privity is required to state a claim of negligent misrepresentation against a party in the business of supplying information. Because plaintiffs' Complaint alleges that defendants are in such a business, (Compl. ¶ 161), the Court must now consider defendants' second basis for dismissal: the argument that even if Section 552 applies despite the lack of privity, plaintiffs have failed to state a claim under that section. Section 552(1) of the Restatement (Second) of Torts defines the tort of negligent misrepresentation.[3] To state a claim under this section, plaintiffs must show "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." Bilt-Rite, 866 A.2d at 277.

Defendants, drawing detailed comparisons between the factual scenario alleged in plaintiffs' Complaint on the one hand, and comments in the Restatement and analogous precedent on the other, argue that plaintiffs have failed to state a claim because Section 552 requires allegations that MoCo performed more than a routine audit. They argue that plaintiffs must also show that MoCo knew its audits would be relied upon by Penn and Krishnamurti and intended for its audits to be relied upon in Parillo's sale of his interest in Matlack.

The Court is unpersuaded by defendants' arguments. Plaintiffs' Complaint alleges that

---

[3] (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
    (2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered
        (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
        (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

"MoCo knew that Matlack intended to supply its work product . . . to Plaintiffs," (Compl. ¶ 166), that "MoCo intended its audited financial statements for Matlack to influence any potential sale of Matlack or its membership interests," (Compl. ¶ 167) and that "MoCo knew that Matlack intended to use the audited financial reports prepared by MoCo to influence any sale of Matlack or its membership interests . . . ." (Compl. ¶ 168). Whether these allegations are true is a quintessential question of fact not appropriate for a motion to dismiss.

Assuming, as this Court must, that the allegations in the Complaint are true, plaintiff has alleged (1) a misrepresentation, (Compl. ¶¶ 161 - 163); (2) made under circumstances in which the misrepresenter ought to have known its falsity, (Compl. ¶ 132-136, 160); (3) with intent to induce another to act on it, (Compl. ¶¶ 166-168); and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation, (Compl. ¶¶ 169 - 170). Defendants' arguments go to the merits of plaintiffs' claim and are more appropriately addressed after discovery has developed the factual record.

### E. Count V – Plaintiffs' Fraudulent Misrepresentation Claim Against MoCo

To state a claim of fraudulent misrepresentation under Pennsylvania law, plaintiffs must allege "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with the knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by such reliance." Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999). Rule 9(b) requires that, when a plaintiff makes a claim of fraudulent misrepresentation, "the circumstances constituting fraud ... shall be stated with particularity," but "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." The Third Circuit has explained that a plaintiff must plead "all of the essential factual background that would accompany 'the first paragraph of any newspaper story'-that is, the 'who, what, when, where, and

how' of the events at issue." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216-217 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1422 (3d Cir. 1997)).

Defendants seek dismissal on two grounds. First, they argue that Count V should be dismissed because the Complaint contains no allegations that MoCo knew, when it prepared the audits, that Krishnamurti was interested or intended to buy Parillo's interest in Matlack. They assert, without citation to authority, that this omission makes it impossible to satisfactorily state the element of intent. Second, they argue that the Complaint does not meet the threshold level of particularity under Rule 9(b).

With regard to the first argument, plaintiffs respond that they need not show actual, subjective intent. Instead, fraud can occur when a misrepresentation is made, for example, "in conscious ignorance of the truth," B.O. v. C.O., 590 A.2d 313, 316 (Pa. Super. Ct. 1991), or by one who "had means of knowledge from which they were bound to ascertain the truth before making the misrepresentation," La Course v. Kiesel, 77 A.2d 877, 880 (Pa. 1951). The Court agrees. As noted in the previous section, paragraphs 166 - 171 of the Complaint allege that MoCo knew, or intended, that its audits would be relied upon by plaintiffs. Defendants' first argument provides no basis for dismissal.

The Court is similarly unpersuaded by defendants' second argument. "In the context of fraud against accountants, a plaintiff must demonstrate the manner in which the defendant departed from reasonable accounting practices." Tredennick v. Bone, 323 F. App'x 103, 105 (3d Cir. 2008) (non-precedential) (citing Christidis v. First Pennsylvania Mortg. Trust, 717 F.2d 96, 100 (3d Cir. 1983)). Plaintiffs' Complaint accomplishes this task. Paragraphs 143, 150, and 173 allege, among other things, that defendants failed to include related party disclosures in Matlack's audited financial statements for fiscal years 2001 - 2005, and made only limited and inadequate disclosures in the

2006 audited financial statement; that defendants failed to give consideration to Matlack's annual budgets; and that defendants failed to complete standardized audit checklists regarding "supervision and review" and "related parties" – a failure that led defendants to neglect to obtain evidence sufficient to afford a reasonable basis for their opinions. These, and the related allegations in paragraphs 143, 150 and 173, provide the "who, what, when, where, and how" of the events at issue, "placing the defendants on notice of the precise misconduct with which they are charged[.]" Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)

In addition, the Complaint contains allegations of gross negligence or recklessness sufficiently specific to overcome the burden imposed by Rule 9(b). The Complaint alleges that MoCo served as both Parillo's personal auditor and the auditor of the various Brite Clean entities, while serving in that same capacity for Matlack. (Compl. ¶¶ 132 - 136). Despite this relationship, MoCo is alleged to have failed to include "related party information" – or to complete the checklists that would have allowed MoCo to gather that information – in its audits from 2001 through 2005. (Compl. ¶¶ 143, 150, 173).

The first prong of Iqbal requires that this court disregard "legal conclusions" or "naked assertions"; the second prong then requires an analysis of the "nub" of the Complaint – "the well-pleaded non-conclusory factual allegations." Iqbal, 129 S. Ct. 1950. Disregarding conclusory labels and allegations of gross negligence or recklessness, the "nub" of the Complaint contains detailed factual allegations regarding Parillo's purported misappropriation of Matlack funds. It also alleges that MoCo knew or, as an accountant to both Parillo and his Brite Clean entities, should have known of these misappropriations, but that it nevertheless certified the Matlack's audits as presented the company's financial statements fairly in all material respects. Taken as a whole, these allegations are sufficiently detailed and particular to survive defendants' motion to dismiss.

**F. Count VI – Plaintiffs' Aiding and Abetting Breach of Fiduciary Duty Claim Against MoCo and Burns**

Defendants seek dismissal of Count VI of the Complaint first, because Pennsylvania does not recognize the tort of aiding and abetting a breach of fiduciary duty, and second, because even if it does, plaintiffs have failed to plead facts sufficient to state such a claim. Finally, they argue that Count VI must be dismissed because plaintiffs have failed to join Richard Parillo, a necessary party under Federal Rule of Civil Procedure 19(b). The Court finds no merit in any of these arguments.

**1. The Tort of Aiding and Abetting Breach of Fiduciary Duty in Pennsylvania**

As a threshold matter, the Court concludes that Pennsylvania recognizes the tort of aiding and abetting a breach of fiduciary duty, as defined by section 876 of the Restatement (Second) of Torts.[4] See Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 417-18 (E.D. Pa. 2006); Pierce v. Rossetta Corp., No. 88-5873, 1992 WL 165817, at * 8 (E.D. Pa. June 12, 1992). In Skipworth by Williams v. Lead Indus. Assoc., Inc., the Pennsylvania Supreme Court noted that it had not yet addressed Section 876. 690 A.2d 169 (1997). Nevertheless, it discussed whether the Skipworth plaintiff had provided facts sufficient to establish such a claim for the purposes of summary judgment. Id. at 174-75. Although Skipworth did not explicitly recognize a cause of action under Section 876, the opinion has since been interpreted as implicitly doing so by the Pennsylvania

---

[4] For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
    (a) does a tortious act in concert with the other or pursuant to a common design with him, or
    (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
    (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876.

Commonwealth Court. See Koken, 825 A.2d at 731 ("[T]his Court is convinced by this language in Skipworth that Section 876 is a viable cause of action in Pennsylvania."); see also Huber v. Taylor, 469 F.3d 67, 79 (3d Cir. 2006) (implying that Pennsylvania recognizes the tort of aiding and abetting a breach of fiduciary duty). This Court agrees with the Koken court's reading of Skipworth.

Having concluded that Pennsylvania recognizes the cause of action alleged in Count VI, the Court must now decide whether the Complaint contains allegations sufficient to state a plausible claim to relief. The elements of the tort of aiding and abetting breach of fiduciary duty are (1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach. Pierce, 1992 WL 165817, at * 8; accord Koken, 825 A.2d at 732.

The Complaint makes factual allegations sufficient to establish each element. Paragraph 180 of the Complaint states that Parillo owed Matlack fiduciary duties as its managing member; paragraph 181 alleges that Parillo breached this duty by, among other things, failing to make distributions in accordance with Matlack's Operating Agreement and by using distributions to fund the purchase of his own private businesses.

The Complaint also contains allegations sufficient to establish that defendants had knowledge of the breach. In paragraphs 132 through 136, the Complaint alleges that MoCo and Burns served as Parillo's personal accountants and performed services for the Brite Clean entities, which were improperly financed by Matlack funds. Paragraphs 182 and 183 supplement these allegations by stating that defendants were willfully blind to Parillo's breaches.

Finally, paragraph 184, read in the context of the allegations made in paragraphs 132 through 136, alleges that defendants failed to disclose, and continued to conceal, Parillo's use of Matlack distributions to fund the Brite Clean businesses, despite serving as BCI's accountants. These allegations contain facts sufficient to plausibly establish that defendants gave Parillo substantial

assistance or encouragement.

Pennsylvania recognizes the tort of aiding and abetting a breach of fiduciary duty. The Court concludes that plaintiffs' Complaint contains facts sufficient to state such a claim.

### 2. Parillo as a Rule 19(b) Necessary Party

Having determined that Pennsylvania recognizes the tort of aiding and abetting a breach of fiduciary duty, and that the Complaint contains facts sufficient to state such a claim, the Court must now address whether Count VI must nevertheless be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join Parillo as a necessary party under Rule 19(b). The Court concludes that it is not necessary to make Parillo a party to this action.

Rule 19 creates a two-tiered mode of analysis. First, the Court must determine whether joinder of a person is necessary. If the person is necessary, then the Court must determine whether joinder is feasible. Bank of Am. Nat'l Turst and Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1053-54 (3d Cir. 1988). The moving party has the burden of showing why a person should be joined pursuant to Rule 19. United States v. Payment Processing Center, LLC, No. 06-0725, 2006 WL 2990392, at *2 (E.D. Pa. Oct. 18, 2006).

A person who is subject to service of process, and whose joinder would not deprive the Court of subject-matter jurisdiction (issues that neither party raises in their briefing), is necessary if, among things, he claims an interest "relating to the subject of the action and is so situated that disposing of the action in the person's absence" may do one of two things: either (i) "as a practical matter impair or impede the person's ability to protect the interest" or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(i), (ii).

Presumably invoking 19(a)(1)(B)(i), defendants argue that Parillo is necessary because any decision on plaintiffs' aiding and abetting claim requires a "legally binding" decision on whether

Parillo breached his fiduciary duty. The Court disagrees. Defendants' bald assertion that Parillo's interests would be impaired or impeded is insufficient to meet their burden. Speculation about what may happen in a hypothetical future legal action between Parillo and unnamed, unknown parties does not demonstrate necessity under Rule 19. Rather, "[g]iven the vast range of potential insults and allegations of impropriety that may be directed at non-parties in civil litigation, a contrary view would greatly expand the universe of Rule 19(a) necessary parties." Pujol v. Shearson Am. Express, Inc., 877 F.2d 132, 136 (1st Cir. 1986) (Breyer, J.); see also Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 407 (3d Cir. 1993) (rejecting argument that would "greatly expand the class of 'necessary' or compulsory parties Rule 19(a) creates").

Defendants must offer more than just speculation. See Pujol, 877 F.2d at 136 ("The mere fact . . . that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party."). As the Third Circuit remarked when confronted with the same legal issue, the court "will not theorize in determining necessary party status about the potential preclusive effect of this action on a later lawsuit as this would be premature." Janney Montgomery Scott, 11 F.3d at 410. Accordingly, defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) is denied.

## VI. CONCLUSION

Counts II and III of the Complaint fail to state a claim because they do not contain allegations that defendants violated a contractual duty separate and apart from the pre-existing legal duty governing professional accountants. Accordingly, defendants' motion is granted with regard to these counts. In all other respects, defendants' motion is denied.

An appropriate order follows.